The next argued case this morning is No. 2011-1530. RANDALL MAY INTL v. DEG MUSIC. Mr. Oswega. Good morning. May it please the Court, my name is Hannibal Oswega. I'm here for Appellant Randall May, International. Summary judgment in the system cannot stand for two reasons. First, a direct application of this Court's Guiding Test, the Functionary Result Test, and the Doctrine of Equivalence demonstrates that the P-20 carrier, the accused product, which literally meets all other claim limitations, contains an equivalent structure to the one missing limitation, this interchangeable or adjustable shoulder supporting member. But the straps are welded, they're not adjustable. The straps are welded, but the straps... Shoulder straps. Yes, the shoulder straps are these rigid shoulder pieces that then come down, and yes, those are welded to the balance of the device, and they are changeable or adjustable at that point where it meets. I'm sorry. Go ahead. The shoulder straps are welded, and the adjustment point is then moved down just a little bit lower, a few inches lower, and that is just, it performs the same function. But those aren't the shoulder pieces that are adjustable down below. It is. It's one completely homogenous piece, and it's an equivalent structure, and that's the point, is that under the Doctrine of Equivalence, what we're looking for is an equivalent structure to these changeable or adjustable shoulder straps, and that is a changeable or adjustable harness piece, and that is RMS position. Now, the second reason that the summary judgment cannot stand is that the weight of the evidence on this point at least raises a material fact issue, making non-infringement under the DOE, or summary judgment of non-infringement under the DOE inappropriate at this point or for resolution on summary judgment. I guess it should be noted that DAG doesn't point to anything in the patent or prosecution history that would create an example from RMI enjoying the full scope of equivalency on this element, and in opposing DAG's motion for summary judgment, RMI produced factual support in the form of expert testimony, which opposed, which DAG did not. They didn't produce any expert testimony or any factual support, and under those circumstances and given the summary judgment... Well, one of the problems with the... You're absolutely correct, that RMI did present expert testimony, but the difficulty I have with that testimony in terms of the DOE issue and the function-way-result test is that while it does look like, to me, each of the experts spoke to function and result, I don't see anything about way. I'm looking, for example, at page 208 of the joint appendix. I guess this is the expert Mr. Casey. It says, This is because the welding of the straps to the denoted V-bar does not alter the function, purpose, or result of the changeable or adjustable shoulder-supporting member's limitation as construed by the Federal Circuit. I'm just giving that as an example. But I didn't see where any of the experts came forward and said anything about the way problem, the function-way-result test. Mr. Casey talked about it being connected to the rest of the carrier portion and that by these bolts and holes that connects the harness to the rest of the carrier, that the harness then can be removed or adjusted up and down. And that is the way we're saying, or that is our position, that is discussion of the way. The way that this harness can be adjusted or changed is through moving the relative position this distance and then re-bolting, or removing the harness and exchanging it for another one of a different size. Disassembling it. Potentially. It's disassembling a portion of it. And that's the whole point, that the carriers need to be able to be adjusted in order to fit musicians of different sizes. Obviously, musicians have different girths. And this playing surface relative to the shoulders, the level of that playing surface is incredibly important for marching band performance. Your position ignores the fact that this case has been here before. It has. And our court held the only reasonable construction is that the shoulder supporting members themselves rather than the entire assembly should be adjustable or changeable. Doesn't that feature a case? I mean, we've already dealt with this. It does not, because before this Court was literal infringement and that's all this Court ruled on. So under a literal infringement analysis, that would be correct. Under literal infringement, the shoulder straps, the point of connectivity... But we've construed the claims to ignore this construction would be to vitiate a limitation of a claim. It would not, because what we're looking at is exchanging a structure for an equivalent structure in the claim. And that's what the Doctrine of Equivalence is meant to do, is not to be constrained to a literal claim construction analysis. Yeah, but we said that... Picking up on what Judge Lurie just said, and I'm quoting now from our previous opinion in the case, the language of both the claim and the specification expressly teaches that the shoulder supporting members slash shoulder straps are themselves adjustable or changeable. So we're saying those shoulder straps themselves, namely what goes over the shoulder, is adjustable. And that is not the case in the accused product. That's why they prevail on literal infringement. But to say that they infringe under DOE would be to remove what we said is a limitation of the shoulder straps themselves being adjustable. To prevail under DOE, you have to take apart this whole three-part piece. Well, what the infringement product is, is not a three-part piece. It's one monolithic... Well, it's one monolithic piece with three... The back piece, the shoulder strap, and the plate are all welded together. Well, it's not welded together. It's actually formed as one piece. Even more so, then. And what they've done, essentially, and as we've addressed this, is taken the shoulder straps and merely extended them down and converged them. And if you look at it in that way, then the shoulder straps themselves, as this one convergent shoulder strap, is precisely adjustable and changeable in the same manner, and it doesn't violate the claim construction. And that, I think, we made a point in the reply where we're saying that it's clearly an insubstantial change to be able to just extend the shoulder straps down and converge them and retain all of the functionality that would otherwise be present in these changeable adjustable shoulder straps. And that is simply to adjust this distance or exchange out these shoulder straps for ones of different sizes and doing that in the exact same way, which is at the point of... When you say exchanging for different sizes, does that mean taking a whole new welded piece and putting it on, right? Yes. Formed together piece. Yes, formed together piece. It's a whole new harness. And you do that at that point where it connects to the rest of the device and the result is the exact same, and that is that you can adjust this distance. What you're saying is that this harness, this welded harness, has a shoulder strap component to it. No, I'm saying it is essentially a modified shoulder strap. And that's what we're looking at. I mean, Deg admits pretty much the same thing, saying this and this has no other function other than to get around the literal construction of the claim element and that it performs the exact same function as the shoulder straps. And that, I think, is very telling on this. The only thing that essentially has been done is... I'm sorry. Essentially, I guess, in conclusion, what I think Deg is arguing is essentially that because the P20 doesn't literally infringe, it can't possibly infringe into the DOE. And I think that's an improper argument. I think that the DOE is there to prevent exactly this sort of insubstantial change where you're just taking an element, modifying it very slightly to retain all the benefits, and, for lack of a better phrase, not pay the piper. You know? And so, if the Court doesn't have any other questions, I'll use the rest of my time to rebuttal. Okay. Let's hear from the other side. Thank you. Mr. Martin. Thank you, Judge Newman. May it please the Court. I'll try to be brief on this. The trouble with this appeal is that the argument basically is paradox. It takes the idea that there is no difference in geography between the part that's at the chest case and the shoulder straps, which is what the claim deals with, because they've been welded. When, in fact, it is the welding itself that has eliminated the possibility of a breach. I suppose the question is, the threshold question is, how can a change be insubstantial with respect to the doctrine of equivalence when the prior appeal said it was substantial? Substantial enough to preclude infringement. That was built into it. Then why did this Court send it back? Because there had been, picking up from the prior appeal, the judge below had not ruled. We asked the judge to rule on DOE in terms of our summary judgment. It did not. There was no record on it, and there was no reason to take that away from the district judge. Well, you can't take a prior decision as negating the possibility of equivalency when it was remanded for that purpose. No, not completely, and not as a matter of law, certainly. But I think when you look at the need to show that the change was insubstantial, it is difficult to reconcile a finding of insubstantiality with an opinion of this Court treating it as quite substantial. You said it was admineral. We didn't say it was quite anything. Correct. Correct. But the point is that once the Court says, in effect, that it is very important that the location of our, the locus of changeability and adjustability is at a different place, you're quite right. That does not dictate the conclusion. I'm saying that... You said it was different, that it was not literal and printed. Yeah. It can be very important or slightly important. What you're saying, Mr. Warren, is that the claim construction that we came down with is necessarily the starting point for the DOE analysis. Yes. Yeah. Usually, when you have a DOE issue, it's decided more or less at the same time. You don't bring it up later. This is one where the prior claim construction to me was so clear that you cannot, under this particular patent, move the location down and say it's equivalent precisely because the thing that made it non-infringing, the change that made it non-infringing was the welding. It's a little bit of a... That's why I think it's a paradox. Going to the safer and more easily expressed reason why the doctrine cannot apply is the Laflamme 442 patent. How about the prior May 492 patent? No, no. This is the Laflamme 442 patent. Similar numbers, different patents. That was a prior art patent cited in the prosecution history that, while it did not have a back plate, had two... It's on page 20 of our brief picture. It had two shoulder straps that connected to a T-bar arrangement with a chest piece that came down with exactly the same configuration as our chest piece, the three or four vertically aligned holes that allowed the adjustment to be made. The T-section in that one only had bolts, not welded, meaning that it basically mirrored what the 86 patent showed with respect to that segment. The only reason it did not anticipate was that there was no back piece. But we don't have to show anticipation to avoid the doctrine of equivalence because under the all-elements rule we focus on the particular limitation not to claim as a whole. What about the relevance of 492, which was, what, a parent? Grandparent, yes. A grandparent. And it talked about adjustability at a variety of places. And that would seem to suggest that the adjustability of the patent before us now of the shoulder straps is rather specific. Yes. Right. In other words, the chest is not the shoulder. That's our position. Yes. In their reply brief, to just finish off the argument on Leflamme, is in their reply brief they didn't contest the fact that Leflamme showed the exact same structure in the prior art. They said, merely that it didn't, that Leflamme 442 did not anticipate, which didn't. But that's not what the all-elements rule is about. We look just at what the particular claim limitation is and it doesn't matter whether or not the Leflamme device has a back brace. I have comments on our motion for fees, but I can reserve those for later. I don't think you have any time to reserve. You only have one argument. Oh, oh. You're not cross-talking. Yes, we think that the argument is frivolous. The entire appeal is frivolous in light of the prior appeal. Okay, we have that. Any more questions for Mr. Martin? Thank you, Mr. Martin. Mr. Escherwede. Thank you. I'd like to address a few things that Mr. Martin had said. First, as far as Leflamme 442, the test under Wilson Sporting Goods does require complete anticipation. If you're going to say that a hypothetical claim under GOE runs afoul of the prior art, and so the fact that Leflamme doesn't contain a back plate is completely valid and precludes that Wilson Sporting Goods argument on their behalf. As far as the May 492 patent, as Judge Lori addressed, it discloses a whole bunch of points of adjustability, and that's the main inventive concept when it comes to RMI, Randall Mays' series of patents, and that is this complete adjustability in as many ways as you can possibly make it to ensure that marching band members can have this completely customized supporting structure. Now, as far as this point of adjustability and moving it down to the chest, again, it's still the shoulder straps. They've just been extended and converged. The point of adjustability, where that takes place, is only relevant with respect to what it contains, and that is the shoulder straps, or the harness, whichever one you want to say, and the balance of the device. And so as far as that location is the way, that location remains exactly the same to the extent that it is not. It's clearly an insubstantial difference. I mean, you've moved it two, three inches, maybe. And I guess in conclusion, I'd like to say that at the end of the day, what RMI is looking for is a chance to go before a jury with this. We believe that we've put enough evidence in front of the district court compared to DEG's almost complete lack of evidence, which we think is enough to preclude summary judgment on this issue, and we think the jury should step up somehow. And if the court has no further questions... Any questions? Thank you. Thank you, Mr. Osorio. Mr. Martin, the case has taken a resubmission.